UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. S2-1:21CR00067 MTS |
| | ) |
| SHANESHA BURNS, | ) |
| | ) |
| Defendant. | ) |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

### 1. PARTIES:

The parties are the defendant Shanesha Burns, represented by defense counsel David Bruns and Jacob Zimmerman, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

### 2. GUILTY PLEA:

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's waiver of indictment and voluntary plea of guilty to a superseding information, charging defendant under Title 21, United States Code, Section 846, with conspiracy to distribute heroin, in violation of Title 21, United States Code, Section 841, and under Title 18, United States Code, Section 924(o), with conspiracy to possess and discharge a firearm, in violation of Title 18,

1

United States Code, Section 924(c), the United States agrees that no further federal prosecution will be brought in this District relative to the defendant's violations of federal law, known to the United States at this time, arising out of the events set forth in the superseding information. In addition, the parties jointly agree to recommend that defendant be sentenced to a term of 240 months (20 years) imprisonment to each of Counts One and Two, to be served concurrently to each other and all other sentences imposed on defendant in any other federal or state criminal case to the extent allowable by law. In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree and acknowledge that the Court is neither a party to this agreement nor is the Court bound by the terms of this agreement.

**3. ELEMENTS:**

### Count One

As to **Count One** of the superseding information, the defendant admits to violating Title 21, United States Code, Sections 841(a)(1) and 846, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

1. Beginning at a time unknown to the Grand Jury but including on or about May 20, 2018, within the Southeastern Division of the Eastern District of Missouri and elsewhere, Defendant reached an agreement or came to an understanding with one or more persons to distribute and possess with the intent to distribute heroin;

2. Defendant voluntarily and intentionally joined in the agreement or understanding, either at the time it was first reached or at some later time while it was still in effect; and

3. At the time Defendant joined in the agreement or understanding, she knew the purpose of the agreement or understanding.

### Count Two

2

As to **Count Two** of the superseding information, Defendant admits to knowingly conspiring to violate Title 18, United States Code, Section 924(c), in violation of Title 18, United States Code, Section 924(o) and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

1. Beginning at a time unknown but including May 2018, two or more people reached an agreement to commit the crime of possession of a firearm in furtherance of a drug trafficking crime as charged in Count One of the superseding information;

2. Defendant voluntarily and intentionally joined in the agreement;

3. At the time Defendant joined in the agreement or understanding, Defendant knew the purpose of the agreement; and

4. While the agreement was in effect, a person or persons who had joined in the agreement knowingly did one or more acts for the purpose of carrying out or carrying forward the agreement.

### 4. FACTS:

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

Beginning at a time unknown to the Grand Jury, but including on or about May 20, 2018, and continuing through on or about February 23, 2021, Burns, along with her co-conspirators Johnson, Cohen, Shelley, Whitfield, and Rogers participated at various times with each other and with others both known and unknown to distribute heroin. Burns is alternately known to her co-conspirators and others as "Nikki" or "Fat Nikki." Cohen, Shelley, Rogers, and Whitfield would

3

transport heroin from St. Louis, Missouri to Butler County, Missouri, within the Southeastern Division of the Eastern District of Missouri, for sale. Once in Butler County, Cohen, Shelley, Whitfield, and Rogers would distribute heroin, primarily to customers in Poplar Bluff, Missouri, and the surrounding area. Burns resided in Poplar Bluff and assisted Cohen, Shelley, Whitfield, and Rogers with the distribution of heroin. Members of the conspiracy, including Burns, utilized Burns' residence at 50 Alyssa Lane to conduct heroin sales and store heroin and drug trafficking paraphernalia. Members of the conspiracy also utilized Burns' car at various times to sell heroin. Burns also sold heroin supplied by Cohen and others to drug customers, including at times James Odell Johnson. Burns was instructed by Cohen at various times to provide heroin to others and was paid approximately $100 per day for selling drugs at Cohen's direction.

On May 18, 2018, members of the Southeast Missouri Drug Task Force and Butler County Sheriff's Office conducted a consent search of Burns' residence located at 50 Alyssa Lane, in Poplar Bluff, Missouri. At approximately 12:15 PM that day, the Missouri State Highway Patrol received information from a Confidential Source that he/she had witnessed heroin being processed and packaged at 50 Alyssa Lane that morning. Law enforcement officers met at the residence and knocked on the front door, where they were greeted by Burns. They informed Burns they had received information that drug activity was occurring at the residence and that they smelled marijuana in the residence. At the request of officers, Burns gave consent to search the residence. During a lawful search of the residence, officers located a plate in the living room, and Burns stated it had been used that morning by victim J.J., who had left a few minutes prior to officers' arrival. Burns stated victim J.J. had been using the plate to process heroin. Officers located small amounts of suspected heroin, cocaine base, and marijuana along with drug paraphernalia and

4

arrested Burns. Burns was subsequently incarcerated at the Butler County Justice Center. Laboratory analysis confirmed that the substances seized from Burns' residence were 28.62 grams of marijuana, fourteen bags (14) containing approximately .05 grams of heroin each, twenty-two (22) capsules containing .05 grams of heroin each and two (2) bags containing .13 grams of cocaine base each. Burns was arrested, and while in custody at the Butler County Justice Center, made statements to the effect that she believed victim J.J. had provided information to police that led to the search of her residence. Burns also made statements to the effect that she was going to shoot victim J.J. unless someone else got him first.

After Burns was released, Burns and James Odell Johnson came to an agreement and understanding that Johnson would shoot and kill victim J.J. Burns asked Johnson to kill victim J.J. because Burns believed victim J.J. "snitched" on Burns, leading to her arrest. Burns told Johnson words to the effect that she had already asked a couple of people "if they would put a hit out" on victim J.J., and Johnson agreed that he would shoot and kill victim J.J. for Burns in retaliation. The retaliation against a suspected informant would also allow the drug conspiracy to continue to operate without interference from law enforcement and would deter others from informing on the conspiracy or its members.

On or about the evening of May 19, 2018, and early morning hours of May 20, 2018, Johnson lured victim J.J. to Johnson's residence to use drugs that had been supplied by Burns and Cohen. Johnson then invited victim J.J. to go shoot pistols. Johnson drove himself and victim J.J. to County Road 612, in rural Butler County, within the Southeastern Division of the Eastern District of Missouri. While Johnson and victim J.J. were shooting pistols, victim J.J.'s weapon jammed. At that point, Johnson shot victim J.J. with a black Taurus PT111 9mm semi-automatic

pistol bearing serial number TZE25676, killing him. Victim J.J.'s body was discovered during the afternoon of May 20, 2018, and investigators recovered various shell casings from the scene, among other evidence. A day or so after the murder, Johnson informed Burns he had killed victim J.J., as they had agreed.

Johnson was later arrested on July 19, 2018, and at the time of his arrest, law enforcement recovered the black Taurus PT111 9mm semi-automatic pistol bearing serial number TZE25676 from Johnson's residence. An expert firearms examiner with the Missouri State Highway Patrol Crime Lab was later able to determine that a shell casing collected at the scene of J.J.'s murder had been fired from the Taurus PT111 9-millimeter pistol seized from Johnson's residence.

The parties agree that, for purposes of the elements set forth above and the sentencing guidelines calculations below, the black Taurus PT111 9mm semi-automatic pistol bearing serial number TZE25676 recovered from Johnson on July 19, 2018, is the firearm cited in the offense of conviction.

### 5. STATUTORY PENALTIES:

The defendant fully understands that the maximum possible penalty provided by law for each of the crimes to which the defendant is pleading guilty is imprisonment of not more than 20 years, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 3 years.

### 6. U.S. SENTENCING GUIDELINES: 2018 MANUAL:

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the U.S. Sentencing Guidelines Total

Offense Level provisions that apply.

### Count One:

#### a. Chapter 2 Offense Conduct:

**(1) Base Offense Level:** The parties agree that the defendant is accountable for conspiring to distribute and possess with intent to distribute at least one kilogram but less than 3 kilograms of heroin, resulting in a Base Offense Level of 30, as found in Section 2D1.1(c)(5).

**(2) Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply with respect to Count One: none known at this time.

### Count Two:

#### a. Chapter 2 Offense Conduct:

**(1) Base Offense Level:** The parties agree that the base offense level is found in Section 2K2.1 and depends on the nature of the firearm, the defendant's criminal history and other factors therein, including whether or not the use of the firearm resulted in death.

**(2) Specific Offense Characteristics: :** The parties agree that 4 levels should be added pursuant to Section 2K2.2(b)(6)(B) because defendant conspired to possess or transfer a firearm with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, to-wit: drug trafficking and discharge of a firearm in furtherance of drug trafficking where death results and the death being a murder as defined by Title 18, United States Code, Section 1111.

Accordingly, application of the Sentencing Guidelines could include the application of Section 2K2.1(c)(1)(B) which provides that an offense involving first degree murder has a base offense level of 43.

**Counts One and Two:**

**b. Chapter 3 Adjustments:**

**(1) Acceptance of Responsibility:** The parties agree that three levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the government of the defendant's intention to plead guilty. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

**c. Estimated Total Offense Level:** The parties make no estimate as to the estimated total offense level at this time. The parties reserve the right to provide an estimated total offense level at sentencing, after having had the opportunity to review the presentence investigation report.

**d. Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

**e. Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline

8

despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

## 7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:

**a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

**(2) Sentencing Issues:** In the event the Court accepts the plea, ~~accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein~~ [initialed L.M.Y.], and, after determining a Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and sentences the defendant within or above that range.

**b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

9

**c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

**a. Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

**b. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:**

Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

**c. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished.

**d. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $200, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e. Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f. Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, costs of incarceration and costs of supervision. The defendant agrees that any fine imposed by the Court will be due and payable immediately.

**g. Forfeiture:** The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees that said items may be disposed of by law enforcement officials in any manner.

## 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses charged against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be

protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

### 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

### 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

### 12. NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except

13

where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

11/29/22
Date

*signature*
LISA M. YEMM #64601MO
MATTHEW A. MARTIN #64000MO
Assistant United States Attorneys

11-25-22
Date

*signature*
SHANESHA BURNS
Defendant

11/25/22
Date

*signature*
JACOB ZIMMERMAN
Attorney for Defendant

14